# Illinois Official Reports

## Appellate Court

---

### *Chraca v. U.S. Battery Manufacturing Co.*, 2014 IL App (1st ) 132325

---

| | |
|---|---|
| Appellate Court Caption | JEFF CHRACA, Plaintiff-Appellant, v. U.S. BATTERY MANUFACTURING COMPANY, Defendant-Appellee (and YUHUAN COUNTY LITIAN METAL PRODUCTS COMPANY, LTD., Defendant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2325 |
| Filed | December 19, 2014 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-005924; the Hon. Moira S. Johnson, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Bryan J. O'Connor, of O'Connor Law Group LLC, of Chicago, for appellant.<br><br>A. Mark O'Danovich and Bryan E. Curry, both of Bullaro & Carton PC, of Chicago, for appellee. |

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Gordon and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal concerns the plaintiff's right under section 2-621 of the Illinois Code of Civil Procedure (735 ILCS 5/2-621 (West 2010)) (Code) to reinstate a product liability claim against one of the product's distributors, despite having served and obtained a default judgment against the alleged ultimate tortfeasor, the product manufacturer. Section 2-621 of the Code allows a nonmanufacturing defendant which identifies the product manufacturer to be dismissed from a product liability action. 735 ILCS 5/2-621(a) (West 2010). The dismissal, however, may be vacated at any time in certain circumstances, such as when the plaintiff subsequently demonstrates that the manufacturer is not subject to the jurisdiction of an Illinois court or is unable to satisfy any judgment. 735 ILCS 5/2-621(b)(3), (b)(4) (West 2010). The plaintiff here argues that the threshold for reinstatement was lowered by *Kellerman v. Crowe*, 119 Ill. 2d 111, 518 N.E.2d 116 (1987), and that he met that lesser standard. The product distributor responds that the statute speaks for itself and this plaintiff did too little to pursue the manufacturer in mainland China before requesting reinstatement of another entity in the distributive chain. The trial court rejected the plaintiff's motion to reinstate and motion to reconsider the ruling. The plaintiff appeals those two rulings. For the reasons that follow, we reverse.

¶ 2    The personal injuries that led to this lawsuit occurred in 2009, while plaintiff Jeffrey Louis Chraca was unpacking a shipment of golf cart batteries sent by defendant U.S. Battery Manufacturing Company (hereinafter, U.S. Battery) to Chraca's employer, Chicago Battery, d/b/a Interstate Batteries, in Skokie, Illinois. Chraca, who was 32 years old at the time, was lifting and carrying individual batteries with the assistance of a flexible, black strap that arrived with the shipment. Each of the "US-2200 XC" six-volt, deep-cycle golf cart batteries weighed roughly 63 pounds, and was 10 inches long, 7 inches wide, and 11 inches tall. Chraca's shoulder and neck were wrenched when the strap gave way. He has attributed the strap's failure to the fact that two metal hooks or U-shaped brackets which were riveted to each end separated from the strap. He contends the strap was "unreasonably dangerous for its foreseeable uses in that it did not function as intended." His employer has been compensating Chraca under the provisions of the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2010)) (Chraca v. Interstate Batteries, No. 10 WC 01151) and in mid-2011 he filed this strict product liability action against distributor U.S. Battery.

¶ 3    The defect alleged in a strict product liability action may be a manufacturing defect, a design defect, or a marketing defect (meaning a failure to give adequate instructions or warning). Restatement (Third) of Torts: Products Liability § 1 cmt. a (1998).

¶ 4    Under the common law, an injured consumer may bring allegations of strict product liability against all entities in the distributive chain, including the product's manufacturer, supplier, wholesaler, retailer, and commercial lessor. *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 772-73, 887 N.E.2d 569, 574 (2008); *Hammond v. North American*

*Asbestos Corp.*, 97 Ill. 2d 195, 206, 454 N.E.2d 210, 216-17 (1983); *Crowe v. Public Building Comm'n*, 74 Ill. 2d 10, 15, 383 N.E.2d 951, 953 (1978) (extending strict liability to commercial lessors). Even though suppliers and sellers do not create defects, they put defective products into the stream of commerce and may be held strictly liable to the injured user. *Hammond*, 97 Ill. 2d at 206, 454 N.E.2d at 216-17. Imposing liability upon nonmanufacturers "is justified on the ground that their position in the marketing process enables them to exert pressure on the manufacturer to enhance the safety of the product." *Hammond*, 97 Ill. 2d at 206, 454 N.E.2d at 216; *Graham v. Bostrom Seating, Inc.*, 398 Ill. App. 3d 302, 306, 921 N.E.2d 1222, 1226 (2010) (the loss caused by unsafe products should be borne by those who derive economic benefit and create the risk of harm by placing products in the stream of commerce).

¶ 5      In many cases, however, only the manufacturer is ultimately ordered to compensate the consumer for his injuries, and the product's suppliers and sellers waste resources defending themselves from the consumer's suit. Restatement (Third) of Torts: Products Liability § 1 cmt. a (1998); *Crowe*, 74 Ill. 2d at 13, 383 N.E.2d at 952 ("Because the ultimate loss will ordinarily be borne, through indemnification, by the party that created the defect, the public policy concern is really who, between the injured user and the seller, should bear the initial loss."). Therefore, in many jurisdictions, legislation immunizes nonmanufacturing defendants from strict liability under certain circumstances (Restatement (Third) of Torts: Products Liability § 1 cmt. a (1998)), even though this immunity may occasionally mean a consumer is left with no remedy at all (Restatement (Third) of Torts: Products Liability § 1 cmt. e(2) (1998) (citing, *e.g.*, *Saieva v. Budget Rent-A-Car of Rockford*, 227 Ill. App. 3d 519, 591 N.E.2d 507 (1992))). See also *Kellerman*, 119 Ill. 2d at 113, 518 N.E.2d at 117 (defendants whose sole basis of liability is their role as members of the distributive chain are able to extract themselves from a product liability action at an early stage, before they incur the expense of fully litigating the dispute). The Illinois legislature has provided this immunity to nonmanufacturers in section 2-621 of the Code of Civil Procedure. 735 ILCS 5/2-621 (West 2010).

¶ 6      Section 2-621 is applicable only to cases such as Chraca's that allege injury from defective products. Section 2-621 provides that "[i]n any product liability action based in whole or in part on the doctrine of strict liability in tort" (735 ILCS 5/2-621(a) (West 2010)), a court must order dismissal of a defendant other than the manufacturer when the following three things occur: (1) the defendant "file[s] an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage" (735 ILCS 5/2-621(a) (West 2010)), (2) the plaintiff files a complaint against the manufacturer (735 ILCS 5/2-621(b) (West 2010)), and (3) the manufacturer has or is required "to have answered or otherwise pleaded" (in other words, the plaintiff has effectively served the manufacturer) (735 ILCS 5/2-621(b) (West 2010)). The Illinois statute also specifies, "Due diligence shall be exercised by the certifying defendant *** in providing the plaintiff with the correct identity of the manufacturer or manufacturers, and due diligence shall be exercised by the plaintiff in filing an action and obtaining jurisdiction over the manufacturer or manufacturers." 735 ILCS 5/2-621(b) (West 2010). Generally, when a defendant complies with the various requirements of section 2-621, its dismissal from the action is mandatory. *Lamkin v. Towner*, 138 Ill. 2d 510, 532, 563 N.E.2d 449, 459 (1990). Exceptions to this rule exist. A court is not to order dismissal where a plaintiff shows that the certifying defendant (1) exercised significant control over the design or manufacture of the product or communicated with the manufacturer about the alleged defect,

(2) had actual knowledge of the defect in the product, or (3) created the defect in the product. 735 ILCS 5/2-621(c) (West 2010).

¶ 7 Additionally, the Illinois statute provides that a plaintiff may, "at any time," "move to vacate the order of dismissal and reinstate" the certifying defendant, "provided plaintiff can show" that the certifying defendant did not identify the correct manufacturer or if the manufacturer is judgment proof, either because the statute of limitations or repose on the plaintiff's claim has run, the manufacturer is not amenable to service of process or the jurisdiction of the court, or the manufacturer is unable to satisfy any judgment or reasonable settlement. 735 ILCS 5/2-621(b)(1)-(5) (West 2010).

¶ 8 After being served in Georgia, U.S. Battery retained Illinois counsel and filed a section 2-621(a) motion to be dismissed from Chraca's suit. 735 ILCS 5/2-621(a) (West 2010). The motion was supported by an affidavit from Fred Wehmeyer, an engineer who is U.S. Battery's senior vice president of product and process engineering. Wehmeyer stated that his employer never manufactured, designed, or exercised any control over the design or manufacture of carrying straps, did not create the alleged defects in the strap at issue, and had no knowledge of any alleged defects prior to Chraca's injury. Rather, if the strap had indeed come from U.S. Battery, then it was one that U.S. Battery had purchased from JessLink, Inc., which was a company located at 222 W. Pebble Creek Lane, Orange, California, 92865 (hereinafter, JessLink). Wehmeyer said he personally reviewed photos of the strap, scrutinized his company's books and business records, and posed questions to JessLink to determine the identity of the strap's manufacturer. His investigation indicated JessLink obtained the strap from Shenyang Kaicheng Foreign Trade Company, Ltd., located in the city of Shenyang, China 11014. In addition, the trade company obtained the strap from the manufacturing company Yuhuan County Litian Metal Products Co., Ltd. (hereinafter, Yuhuan), which was located in China at Shuilong Industry Borough Kanmen, Yuhuan County, Zhejiang Province. In a follow up letter to Chraca, U.S. Battery restated in Chinese script the manufacturing company's name, address, and telephone and fax numbers and also specified the identity and cell phone number of the owner, Ji Rong Chen, in Chinese script.

¶ 9 Chraca then asked the court for leave to file a first amended complaint adding allegations against Yuhuan and for the court to appoint APS International, Ltd. (hereinafter, APS), as a special process server to serve this new defendant in China. The court granted both requests as well as Chraca's subsequent motion for a default judgment against the strap manufacturer after it had been "served with Complaint and Summons in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters." The People's Republic of China and the United States of America are both parties to The Hague Convention. See Hague Conference on Private International Law, Status table, Members of the Organisation, www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Dec. 18, 2014). "The Hague Convention is a multinational treaty, which was first drafted in 1965, for the purpose of creating an appropriate means 'to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time.' [Citation.]" *White v. Ratcliffe*, 285 Ill. App. 3d 758, 765, 674 N.E.2d 906, 911 (1996). In other words, the treaty specifies procedures for accomplishing foreign service of process. *White*, 285 Ill. App. 3d at 765, 674 N.E.2d at 911.

¶ 10 Chraca next filed a written response opposing U.S. Battery's dismissal. He argued in part that the Chinese strap manufacturer was " 'thumbing its nose' at this Illinois court" by

"ignoring this action," and that this was sufficient grounds under *Kellerman*, 119 Ill. 2d 111, 518 N.E.2d 116, to keep U.S. Battery in the case. Chraca provided an affidavit from one of his attorneys, Bryan J. O'Connor, Sr., stating that despite obtaining service through the APS agency, it was counsel's opinion that there was "no good faith basis to assert that Illinois has jurisdiction over [the manufacturer]" and that Chraca would be unable to collect on the default judgment. Chraca also filed an affidavit and supporting records from a paralegal employed by APS detailing how APS served Yuhuan in accordance with The Hague Convention. The paralegal explained that under the treaty, Chraca was entitled to a default judgment, but that a defaulted defendant would have one year to "reopen" the judgment. Chraca also filed his attorney's supplemental affidavit and a printout of an email conversation that counsel had in late August 2012 with a Mayer, Brown attorney, R. Terence Tung. In the email messages, attorney O'Connor had asked attorney Tung how to demonstrate to the court that there is "no reasonable expectation of ever collecting a judgment against the Chinese company," and Tung opined:

"1. there is no arrangement for reciprocal enforcement of judgment between the US and the People's Republic of China ('PRC') and as such, it is not possible to register a US judgment in China;

2. to initiate collection proceedings, it will be necessary to start fresh proceedings in the PRC in the name of your client based presumably on an action in tort.

Please, however, note that your client will have to instruct a PRC law firm to act on his behalf in the collection proceedings but the amount of damages that may be awarded in the PRC will be significantly less than that in the US. I suppose that how one can demonstrate that there is 'no reasonable expectation of ever collecting a judgment against the Chinese company' is a question of US law[,] and *** we can *** explore whether or how your client can discharge the burden of proving the quoted statement. Kindly let us know how you wish us to proceed."

¶ 11 The circuit court considered the written submissions, heard oral arguments, and then granted the section 2-621 dismissal of U.S. Battery.

¶ 12 Only two weeks later, however, Chraca filed a motion to reinstate his claim against U.S. Battery pursuant to either subsection (b)(3) or (b)(4) of the same statute. 735 ILCS 5/2-621(b)(3), (b)(4) (West 2010). We summarized the statute above, but the specific subsections Chraca cited read as follows:

"The plaintiff may at any time subsequent to the dismissal move to vacate the order of dismissal and reinstate the certifying defendant or defendants, provided plaintiff can show one or more of the following:

* * *

(3) That the manufacturer no longer exists, cannot be subject to the jurisdiction of the courts of this State, or, despite due diligence, the manufacturer is not amenable to service of process; or

(4) That the manufacturer is unable to satisfy any judgment as determined by the court[.]" 735 ILCS 5/2-261(b) (West 2010).

¶ 13 One of Chraca's grounds for reinstating U.S. Battery was that according to his reading of *Kellerman*, 119 Ill. 2d 111, 518 N.E.2d 116, all that he needed to show in order to bring the product wholesaler back into the case under subsection (b)(3) was that it "appeared" there was

no jurisdiction over the product manufacturer and that it would be "fruitless" to pursue an action. 735 ILCS 5/2-621(b)(3) (West 2010). Chraca offered several theories as to why it "appeared" there could be no jurisdiction over the Chinese manufacturer, including that the manufacturer did not import the strap directly to the United States, which meant that it did not "target" Illinois consumers. Chraca again tendered his attorney's affidavit describing why counsel concluded there was "no good faith basis to assert that Illinois has jurisdiction." Chraca also relied on an affidavit jointly executed by Chinese attorneys Xiong Yin and Yan Zhou, who stated:

> "4. There is no judicial assistance treaty of arrangement for reciprocal enforcement of a judgment between the United States and the [PRC]. Consequently, Chinese courts generally will not recognize or enforce a judgment obtained in an American state court. It is almost impossible to directly register in China a judgment obtained in an American state court. Without being so registered, therefore, a judgment entered in an American state court is not directly collectible in China against a Chinese company.

> 5. In order to actually obtain a judgment against a Chinese company, it would be necessary to initiate a new action in PRC; in this case, presumably an action in tort against the alleged Chinese manufacturer.

> * * *

> 10. It is our opinion that in all likelihood Chinese courts may not recognize or enforce a judgment obtained against Yuhuan County Litian Metal Products Ltd. in the Circuit Court of Cook Count, Illinois, as any such judgment typically could not be directly registered in China. Accordingly, any judgment entered against Yuhuan County Litian Metal Products Ltd. in the Circuit Court of Cook County, Illinois is almost impossible to be directly collectible in China against Yuhuan County Litian Metal Products Ltd. Rather, as stated above, a separate action would have to be initiated in China against Yuhuan County Litian Metal Products Ltd. Thus, the action against Yuhuan in Illinois very likely would be fruitless."

¶ 14 In its written response, U.S. Battery contended Chraca was misstating the legal standard for reinstatement. U.S Battery also provided an affidavit from Connie Steinberg, JessLink's sole owner, who conceded that JessLink "imported and distributed" parts and materials and that her company had purchased the Yuhuan-manufactured battery strap at issue and then "supplie[d]" the strap to U.S. Battery. Steinberg also said that she had been buying Yuhuan-made straps for about 10 years.

¶ 15 The court denied Chraca's motion. The judge reasoned that Chraca had previously argued and relied on service of process to obtain the default judgment, yet was now contending the court lacked jurisdiction. Furthermore, Chraca's exhibits indicated it might be "difficult" for him to collect an Illinois judgment, but difficulty was not one of the statutory criteria for reinstatement. The judge denied the motion without prejudice.

¶ 16 About two months later, Chraca returned with a "motion to reconsider" in which he again disputed the court's jurisdiction over Yuhuan. He tendered an affidavit executed by Don Wang on April 11, 2013. Wang indicated that he speaks Mandarin Chinese and that on March 19, 2013, he dialed the cell phone number for Yuhuan's owner, Ji Rong Chen, which was part of the manufacturer's contact information that U.S. Battery gave to Chraca in September 2011. According to Wang, Chen then told him that Yuhuan was not selling its products in the United

States, was not employing anyone in the United States, and "does not do any business in the United States."

¶ 17    In its response in opposition to Chraca's motion, U.S Battery pointed out that the statements Wang was attributing to Chen were hearsay and that there was no apparent reason for Chraca to have waited 18 months to make the phone call to China.

¶ 18    After oral arguments, the judge stated that Chraca's motion was captioned as a reconsideration request, but, because her prior ruling had been without prejudice, she was treating the motion as a second motion to reinstate. See *Berge v. Mader*, 2011 IL App (1st) 103778, ¶ 9, 957 N.E.2d 968 (indicating courts are guided not by just the caption of a motion but also by its substance). On appeal, Chraca characterizes this motion as a request for reinstatement rather than a request to reconsider the previous motion. Given the content of the motion and its treatment by the parties and trial judge, we will also address the motion as a second motion to reinstate. After the judge said she would be denying the second motion to reinstate, there was some discussion as to whether the ruling should be without prejudice to filing a third motion to reinstate or should be made final and appealable. The judge agreed to delay entering her ruling until the attorneys researched and discussed their appellate options and told her how they preferred to proceed.

¶ 19    On July 15, 2013, the judge entered a written order denying Chraca's motion. The order did not specify whether the denial of reinstatement was "with prejudice" or "without prejudice," but it included Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) language. By its own terms, Rule 304(a) applies only to final judgments or orders. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010). Thus, Rule 304(a) is inapplicable to orders entered "without prejudice." See *Kellerman*, 119 Ill. 2d at 115, 518 N.E.2d at 118 (stating that if dismissal orders were nonfinal, then Rule 304(a) would be inapplicable). If the order at issue was not final, then the special finding under Rule 304(a) would have served no purpose and would not make the order appealable. *Kellerman*, 119 Ill. 2d at 115, 518 N.E.2d at 118. An order that is final and appealable is an order that terminates litigation between the parties on the merits of the cause. *Kellerman*, 119 Ill. 2d at 115, 518 N.E.2d at 118. "While the order need not dispose of all the issues presented by the pleadings, it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof." (Internal quotation marks omitted.) *Kellerman*, 119 Ill. 2d at 115, 518 N.E.2d at 118. We read the judge's finding in this case to mean that Chraca's specific arguments under subsections (b)(3) and (b)(4) were rejected "with prejudice," that is, the denial of reinstatement on those grounds was final and appealable so those arguments could be immediately appealed under Rule 304(a). *South Side Trust & Savings Bank of Peoria v. Mitsubishi Heavy Industries, Ltd.*, 401 Ill. App. 3d 424, 431, 927 N.E.2d 179, 187 (2010) (indicating that the denial of section 2-621 motion to reinstate a defendant renders the dismissal order final and appealable). Accordingly, we proceed to the merits of Chraca's appellate arguments.

¶ 20    Chraca first argues *Kellerman* sets out "the evidentiary standard on a motion to reinstate" and obligates the plaintiff to show only that "it 'appears' that an action against the foreign manufacturer would be 'unavailing or fruitless.' " Appellee U.S. Battery responds that Chraca is "reimagining the language and holding" of the case, that *Kellerman* does not lessen the plaintiff's evidentiary burden, and that the statutory language is controlling.

¶ 21    We address questions of statutory interpretation *de novo*. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461, 939 N.E.2d 487, 490 (2010). Our task is to ascertain

and give effect to the intent of the Illinois legislature. *JPMorgan*, 238 Ill. 2d at 461, 939 N.E.2d at 490. We do this by considering the plain language of the statute, and when it is clear, we apply it as written without resorting to other rules of statutory construction. *JPMorgan*, 238 Ill. 2d at 461, 939 N.E.2d at 490.

¶ 22    We find that *Kellerman* does not set out an evidentiary standard for retaining or reinstating a nonmanufacturing defendant in a strict product liability action. The language that Chraca has quoted and relied on throughout these proceedings in the trial and appellate courts is merely a descriptive summary of section 2-621. The *Kellerman* court was not construing any specific statutory terms and its summary of the statute does not diminish or enhance the legislature's wording. Also, the *Kellerman* court did not analyze any evidence and, therefore, nothing in its opinion could be considered an evidentiary standard. According to the plainly worded statute, it is Chraca's burden to show that he is entitled to have the court vacate the dismissal order and reinstate the nonmanufacturing defendant to his product liability action. Chraca needed to show either that the product manufacturing defendant "is unable to satisfy any judgment as determined by the court" or "cannot be subject to the jurisdiction of the courts." 735 ILCS 5/2-621(b)(3), (b)(4) (West 2010).

¶ 23    We next consider whether the evidence Chraca relied on was sufficient to satisfy either of those two statutory grounds. We address the ruling *de novo*, because the trial court heard no disputed evidence, made no findings of fact, and ruled solely on the basis of documentary evidence (*Rosenthal-Collins Group, L.P. v. Reiff*, 321 Ill. App. 3d 683, 687, 748 N.E.2d 229, 233 (2001)), namely, the various affidavits.

¶ 24    We find that Chraca failed to show that Yuhuan is "unable to satisfy any judgment." 735 ILCS 5/2-621(b)(4) (West 2010). Authority indicates that in a section 2-621 proceeding, a company is deemed "unable to satisfy any judgment" when it is bankrupt or nonexistent. See *Harleysville Lake States Insurance Co. v. Hilton Trading Corp*., No. 12 C 8135, 2013 WL 3864244, at *3 (N.D. Ill. July 23, 2013) (under Illinois law, where retailer identified manufacturer of counterfeit bill detector that had started an office fire, and the manufacturer was not shown to be "insolvent or otherwise judgment-proof," the retailer was entitled to be dismissed); *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1271 (D. Minn. 2009) (under Minnesota's version of the statute at issue, where the product manufacturer had declared chapter 7 bankruptcy and thus was unreachable, the retailer was not entitled to be dismissed); *Malone v. Schapun, Inc.*, 965 S.W.2d 177, 182 (Mo. Ct. App. 1998) (indicating that under Missouri's version of the statute at issue, a nonmanufacturer should not be dismissed unless the manufacturer "is insolvent").

¶ 25    Chraca presented no information about Yuhuan's financial viability and the record suggests Yuhuan is an ongoing business, because Chraca's Mandarin Chinese translator, Wang, purports to have reached Yuhuan's owner on his cell phone several years after Chraca was injured. Chraca's attorney misconstrued the statutory language when he asked attorney Tung how Chraca could demonstrate to the Illinois trial court that there is "no reasonable expectation of ever collecting a judgment against the Chinese [manufacturing] company." Tung's response and the joint affidavit of the two Chinese attorneys about their local court's unwillingness to "recognize or enforce a judgment obtained in an American state court" do not indicate that Yuhuan was declared bankrupt or is no longer operating and thus is "unable to satisfy any judgment" as that phrase is used in the statute at issue. 735 ILCS 5/2-621(b)(4) (West 2010).

¶ 26 Although we conclude Chraca has not met his burden under section 2-621(b)(4), we do find that he is entitled to reinstatement of U.S. Battery pursuant to section 2-621(b)(3) because the evidence shows Illinois does not have personal jurisdiction over Yuhuan. 735 ILCS 5/2-621(b)(3), (b)(4) (West 2010). Chraca is in the unusual position of advancing arguments essentially on Yuhuan's behalf that this Chinese manufacturer is not subject to personal jurisdiction in Illinois. U.S. Battery contends that Chraca did very little discovery and failed to gather sufficient evidence that would lead one to conclude that jurisdiction is lacking.

¶ 27 The Illinois long-arm statute allows its courts to exercise personal jurisdiction to the full extent allowed by the state and federal constitutions. 735 ILCS 5/2-209(c) (West 2010). Pursuant to the federal constitution's due process clause, the defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit [in that forum] does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). When the defendant has certain minimum contacts, his "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). In a product liability case, such as this one, the defendant satisfies this requirement when it " 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. ___, ___, 131 S. Ct. 2780, 2787 (2011) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The focus of analysis is always on the defendant's conduct, so that a nonresident is not haled into a forum solely because of another party's unilateral activity. *Burger King Corp. v. Rudzewicz*, 471 U.S 462, 475 (1985).

¶ 28 Personal jurisdiction comes in two forms: specific jurisdiction and general jurisdiction. The assertion of specific jurisdiction is appropriate when "the defendant has 'purposefully directed' his activities at residents of the forum, [citation], and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472. Under those circumstances, the nonresident defendant has had "fair warning" that its activities may expose it to suit in the forum state. (Internal quotation marks omitted.) *Burger King*, 471 U.S. at 472. The other form of jurisdiction, general jurisdiction, is not at issue here. General jurisdiction occurs when the events that are the basis of the lawsuit do not arise out of and are not related to any activities within the forum state, but the minimum contacts requirement has been satisfied by the defendant's "continuous and systematic" contacts with the forum state. See *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, ___, 131 S. Ct. 2846, 2851 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

¶ 29 Chraca bases his jurisdiction argument primarily on *Nicastro*, 564 U.S. ___, 131 S. Ct. 2780, in which the Supreme Court held that a New Jersey court could not lawfully exercise personal jurisdiction over a British manufacturer whose metal-shearing machine, distributed through an American company that targeted the entire United States market, caused a severe hand injury in New Jersey. An employee of a scrap metal recycler alleged that the three-ton machine was defectively designed or manufactured. *Nicastro v. McIntyre Machinery America, Ltd.*, 987 A.2d 575, 577 (N.J. 2010).

¶ 30 The Supreme Court held, however, that the British company's mere placement of its product into the stream of commerce, with the expectation that the product might be sold and used in the forum state, was insufficient to justify specific personal jurisdiction in the forum

state over the foreign manufacturer. *Nicastro*, 564 U.S. at ___, 131 S. Ct. at 2788. The manufacturer must have "targeted" the forum before it would be deemed to have submitted to the jurisdiction of the forum. *Nicastro*, 564 U.S. at ___, 131 S. Ct. at 2788. We reiterate that as a general rule, the exercise of judicial power over a foreign defendant is not lawful unless the foreign defendant has " 'purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Nicastro*, 564 U.S. at ___, 131 S. Ct. at 2785 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Officials of the British company had attended trade shows in several states but not in New Jersey, the company shipped its products to an independent American distributor, and as many as four of its machines ended up in New Jersey. *Nicastro*, 564 U.S. at ___, 131 S. Ct. at 2790. However, the British company had no office, employees or property in New Jersey, it paid no taxes in New Jersey, and it sent no advertising or employees to the state. *Nicastro*, 564 U.S. at ___, 131 S. Ct. at 2790. The British company was not subject to jurisdiction in New Jersey because it had not sent goods to, advertised in, or otherwise targeted New Jersey. *Nicastro*, 564 U.S. ___, 131 S. Ct. at 2785. Again, it is not enough that a defendant might predict that its goods will reach the forum state. *Nicastro*, 564 U.S. at ___, 131 S. Ct. at 2788. "[I]t is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment." *Nicastro*, 564 U.S. at ___, 131 S. Ct. at 2789.

¶ 31    In *Wiles*, an injured worker brought a strict product liability action against a Japanese manufacturer after two of four machines it sold in Japan were shipped by the buyer to Illinois. *Wiles v. Morita Iron Works Co.*, 125 Ill. 2d 144, 146-47, 530 N.E.2d 1382, 1383 (1988). The Japanese company was unaware that its machines were destined for Illinois and had made no effort to market to this forum. *Wiles*, 125 Ill. 2d at 160, 530 N.E.2d at 1389-90. The manufacturer had no knowledge either during contract negotiations or when its machines were delivered to the buyer in Japan that the buyer intended to transport the machines to Illinois, or even that the buyer had a facility in Illinois. *Wiles*, 125 Ill. 2d at 160, 530 N.E.2d at 1290. The unilateral actions of the buyer did not satisfy the requirement of contact with Illinois. *Wiles*, 125 Ill. 2d at 160, 530 N.E.2d at 1390.

¶ 32    Chraca also relies on *Morris*, which involved a ceiling fan that was manufactured in Taiwan and alleged to have fallen from a consumer's ceiling because of defective design and manufacture. *Morris v. Halsey Enterprises Co.*, 379 Ill. App. 3d 574, 882 N.E.2d 1079 (2008). The Taiwanese manufacturer made fans for Casablanca Fan Company (Casablanca), which was incorporated in Illinois. *Morris*, 379 Ill. App. 3d at 575, 882 N.E.2d at 1081. The manufacturer was aware that hundreds of thousands of its fans were distributed and marketed in the United States through national home improvement chain stores, including Home Depot and Lowe's, and through a national network of at least 600 lighting stores. *Morris*, 379 Ill. App. 3d at 577, 882 N.E.2d at 1082. The manufacturer shipped its products to California and to Home Depot's regional distribution centers. *Morris*, 379 Ill. App. 3d at 577, 882 N.E.2d at 1082. The manufacturer, however, had no control over the distribution of its fans within this country, was not aware of which specific states its fans were being marketed or sold in, and was not aware that its fans were being marketed or sold in Illinois. *Morris*, 379 Ill. App. 3d at 582-83, 882 N.E.2d at 1086-87. Accordingly, this court found that there were not sufficient minimum contacts to justify the exercise of personal jurisdiction over the Taiwanese manufacturer. *Morris*, 379 Ill. App. 3d at 583, 882 N.E.2d at 1087.

¶ 33    Applying these principles to the record in this appeal, we find that Chraca has clearly shown that the Chinese manufacturer of the battery strap "cannot be subject to the jurisdiction of the courts" and, thus, the other defendant should be reinstated to the case. 735 ILCS 5/2-621(b)(3) (West 2010). The record includes Chraca's complaint; printouts documenting Chraca's attempts to locate Yuhuan by searching the Internet and databases maintained by the Illinois and California Secretaries of State, and various affidavits, including sworn statements from Chraca's attorney, Chraca's Chinese translator (Wang), and JessLink's owner (Steinberg). U.S. Battery's senior vice president (Wehmeyer) also completed an affidavit and was deposed.

¶ 34    The Wehmeyer and Steinberg affidavits establish that Yuhuan manufactured the strap in Zhejiang Province, China, and then sold it to a Chinese trading company located in Shenyang, China, which conveyed the strap to JessLink in California. JessLink is the importer and distributor of the strap in the United States. JessLink conveyed the strap to U.S. Battery in Georgia, which bundled the strap into a shipment of batteries purchased by Chraca's Illinois employer. Wehmeyer's deposition testimony indicates that U.S. Battery stacked approximately 40 batteries on a shipping pallet, placed a small box of tools and a battery strap on top of the stack, and then shrink-wrapped everything together before shipping the pallet to Chraca's employer. The battery strap was not specifically ordered or selected by Chraca's employer when the company purchased the load of golf cart batteries. These facts demonstrate that Yuhuan placed its product into the stream of commerce in China but took no action to place it into the hands of the Illinois consumer. There is no indication the foreign manufacturer had any connection of its own with Illinois. Yuhuan did not sell its product to an Illinois company. Yuhuan did not market to Illinois or otherwise follow a course of conduct to direct its battery strap into Illinois.

¶ 35    We reach this conclusion despite U.S. Battery's contention that Wehmeyer was not attempting to describe or detail the full extent of the manufacturer's contacts with Illinois so that Chraca could sue the manufacturer in his home forum. It is apparent from what Wehmeyer and Steinberg did say that the connection between the Chinese manufacturer and Illinois is tenuous and that Yuhuan did not have contact with any business or individual in this forum.

¶ 36    U.S. Battery also contends that one could validly speculate from the record that companies throughout Illinois are receiving component parts or products from Yuhuan. U.S. Battery, however, does not point to any specific facts indicating that Yuhuan could be subject to general jurisdiction or that Chraca's argument for reinstatement due to lack of specific jurisdiction has been misleading or incomplete. We are confident that if Yuhuan had any contacts with Illinois, its name would have shown up in at least one of the searches that Chraca's counsel made. According to his affidavit and attached printouts, Chraca's attorney was unable to find a website for Yuhuan that is accessible in the United States. He could not find Yuhuan's name in the corporate and foreign corporate listings that are maintained by the Illinois Secretary of State or in the foreign corporate listing kept by the California Secretary of State.

¶ 37    Furthermore, although translator Wang's affidavit about his telephone conversation with Yuhuan's owner, Chen, is arguably hearsay evidence, Wang, nevertheless, confirmed the other, competent evidence indicating that Yuhuan "(a) does not sell its products in the United States, (b) does not do business in the United States, and (c) does not have employees in the United States."

¶ 38    There are no facts suggesting the Chinese manufacturer was even aware its strap had made its way as far as Illinois. Yuhuan did not target this forum and its conduct was not directed at this market so that Illinois has the power to subject Yuhuan to a judgment concerning its product.

¶ 39    For these reasons, we find that Chraca met his burden of showing through competent evidence that the certifying defendant, U.S. Battery, should be reinstated as an active defendant to this case. See *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d 185, 191, 553 N.E.2d 1139, 1143 (1990) (indicating a plaintiff must put on competent evidence to show under section 2-621 that the certifying defendant should remain in the case). See generally *Rosenthal-Collins Group*, 321 Ill. App. 3d at 687, 748 N.E.2d at 233 ("[i]t is up to the moving party to present competent evidence to support an assertion"). Accordingly, we reverse the trial court's denial of Chraca's motion and vacate the dismissal of U.S. Battery from the case.

¶ 40    Finally, we respond to the concerns voiced by Chraca's attorney that he has been personally and unfairly attacked by opposing counsel in the briefs filed with this court. We agree that U.S. Battery's brief includes numerous inappropriate and unnecessary remarks about Chraca's lawyer. The comments exceed the scope of zealous advocacy. We expect litigants to confine their arguments to the issues on appeal.

¶ 41    The judgment of the circuit court is reversed.

¶ 42    Reversed.