# Illinois Official Reports

## Supreme Court

***Cassidy v. China Vitamins, LLC*, 2018 IL 122873**

| | |
|---|---|
| Caption in Supreme Court: | MARTIN CASSIDY, Appellee, v. CHINA VITAMINS, LLC, Appellant. |
| Docket No. | 122873 |
| Filed | October 18, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Kathy M. Flanagan, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Circuit court judgment reversed.<br>Cause remanded. |
| Counsel on Appeal | Michael M. Resis, of SmithAmundsen LLC, of Chicago, for appellant.<br><br>Matt Cannon and Michael D. Carter, of Horwitz, Horwitz and Associates, of Chicago, for appellee.<br><br>James P. Costello, of Costello, McMahon, Burke & Murphy, Ltd., of Chicago, for *amicus curiae* Illinois Trial Lawyers Association. |

JUSTICE KILBRIDE delivered the judgment of the court, with opinion.

Justices Garman, Burke, Theis, and Neville concurred in the judgment and opinion.

Chief Justice Karmeier dissented, with opinion, joined by Justice Thomas.


**OPINION**

¶ 1    Alleging injuries caused by a defective product that was manufactured in China, the plaintiff, Martin Cassidy, filed a strict product liability action against China Vitamins, LLC (China Vitamins), a nonmanufacturer defendant. China Vitamins was dismissed from the lawsuit, however, after providing Cassidy with information about the product's Chinese manufacturer, Taihua Group. A default judgment of over $9 million was eventually entered against the manufacturer, but Cassidy's efforts to collect on the judgment were unsuccessful. Consequently, he sought to reinstate China Vitamins as a defendant under section 2-621(b)(4) of the Illinois Code of Civil Procedure (735 ILCS 5/2-621(b)(4) (West 1994)).[1]

¶ 2    After initially reinstating China Vitamins, the trial court vacated that order and denied Cassidy's reinstatement motion, finding that he had failed to establish the statutory requirement "[t]hat the manufacturer is unable to satisfy any judgment as determined by the court." In making that finding, the trial court relied on the standard set forth in *Chraca v. U.S. Battery Manufacturing Co.*, 2014 IL App (1st) 132325, conditioning reinstatement on the plaintiff's showing that the manufacturer was bankrupt or no longer in existence. On appeal, a divided appellate court rejected *Chraca*'s interpretation of section 2-621(b), instead requiring evidence that the manufacturer was "judgment-proof" or "execution-proof." 2017 IL App (1st) 160933, ¶¶ 33-34.

¶ 3    This court is now tasked with interpreting section 2-621(b)(4) in light of our rules of statutory construction and the legislative intent underlying this state's strict product liability laws. We affirm the appellate court's judgment and remand the cause for further proceedings on Cassidy's motion to reinstate China Vitamins.


¶ 4    I. BACKGROUND

¶ 5    Martin Cassidy was working at the Ridley Feed Ingredients facility in Mendota, Illinois, in October 2006, when he was severely injured. He filed a three-count complaint in the circuit court of Cook County against New Jersey-based defendant China Vitamins, the distributor of an imported flexible bulk container of vitamins that allegedly broke, causing a stacked bulk container to fall and seriously injure him. His complaint raised theories of recovery based on strict product liability, negligence product liability, and *res ipsa loquitur*. China Vitamins filed

---

[1]Section 2-621, as amended by Public Act 89-7 (eff. Mar. 9, 1995), was held unconstitutional in its entirety and not severable in *Best v. Taylor Machine Works*, 179 Ill. 2d 367 (1997). Accordingly, the version of section 2-621 in effect prior to the 1995 amendment applies to this case.

an answer admitting that it distributed and sold the product inside the flexible bulk containers but denying that it manufactured either that product or the containers. Later, the trial court dismissed Cassidy's *res ipsa loquitur* count for failure to state a cause of action.

¶ 6    In May 2008, China Vitamins identified the manufacturer of the flexible bulk containers as Taihua Group Shanghai Taiwei Trading Company Limited,[2] headquartered in China. Cassidy then filed a nine-count amended complaint adding Taihua Group and Zhejiang Nhu Company, Ltd. (Zhejiang Nhu), the Chinese manufacturer of the vitamins, as defendants. Taihua Group's legal counsel filed an answer admitting it designed, manufactured, distributed, supplied, and/or sold a flexible bulk container but withdrew from the case in January 2010. The trial court ordered Taihua Group to obtain new counsel by March 2010. In 2011, China Vitamins filed a summary judgment motion and sought dismissal of the strict product liability and negligence product liability counts against it on the grounds that it was neither the designer nor the manufacturer of the defective container. Cassidy opposed the motion, and China Vitamins filed a reply.

¶ 7    The evidence showed that China Vitamins bought vitamins from Chinese manufacturer Zhejiang Nhu[3] and imported them for sale to third parties, such as Cassidy's employer, Ridley Feed Ingredients (Ridley), for use in animal feed and human dietary and food supplements. Ridley had purchased bulk vitamins from China Vitamins since 2000. After China Vitamins placed an order in China, totes weighing approximately one metric ton would be loaded into shipping containers before being transported to the west coast of the United States, where they would be transferred to trains bound for the Chicago area. The container at issue here was part of an order delivered to Ridley's Mendota facility, where Cassidy was injured.

¶ 8    In January 2012, the trial court dismissed China Vitamins from the action under section 2-621(b) of the Illinois Code of Civil Procedure (735 ILCS 5/2-621(b) (West 1994)), treating its summary judgment motion as a motion to dismiss without prejudice. After Taihua Group failed to retain new counsel as ordered in 2010, the trial judge entered a default judgment against it. The cause of action was transferred for prove-up, and Cassidy was awarded a default judgment of over $9.1 million against Taihua Group in June 2012.

¶ 9    Cassidy issued a citation to discover assets against Taihua Group that was quashed for lack of proper foreign service. Between March and October 2013, he also issued several third-party citations to discover assets for collection of the default judgment. When those collection efforts failed, Cassidy filed a motion to reinstate China Vitamins under section 2-621(b). China Vitamins argued that Cassidy's motion did not satisfy the statutory reinstatement requirements. The trial court granted Cassidy's motion on jurisdictional grounds in September 2015 but did not address the statutory requirements. China Vitamins filed a motion to reconsider, again raising Cassidy's failure to satisfy the requirements in section 2-621(b). The trial court then vacated its prior order and granted China Vitamins' motion to reconsider, concluding that Cassidy had not met the statutory reinstatement requirements and making the

---

[2]During the course of this action, this defendant has been referred to by various names: "Shanghai Taiwei Trading Co., Ltd."; "Shanghai Taiwei"; "Taihua Group Shanghai Taiwei Trading Co., Ltd."; "Taihua Group Shanghai"; and "Taihua." Throughout this opinion, we will refer to it as "Taihua Group."

[3]Zhejiang Nhu is not a party to this appeal.

order final and appealable under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). After filing his own unsuccessful motion to reconsider, Cassidy filed a timely notice of appeal.

¶ 10    A divided appellate court rejected the appellate court's interpretation of section 2-621(b)(4) in *Chraca,* 2014 IL App (1st) 132325. That court concluded the statutory requirement that the manufacturer be "unable to satisfy any judgment" is met only if the manufacturer is shown to be bankrupt or no longer in existence. 2017 IL App (1st) 160933, ¶ 28. Instead, the appellate majority in this case interpreted the statutory language to require a showing that the manufacturer is "judgment-proof" or "execution-proof" before a previously dismissed seller or distributor could be reinstated as a party. 2017 IL App (1st) 160933, ¶¶ 29-35. The majority then remanded Cassidy's cause of action for an initial determination of whether Taihua Group was indeed unable to satisfy the default judgment entered against it under the majority's new interpretation of section 2-621(b)(4). 2017 IL App (1st) 160933, ¶¶ 38, 41.[4]

¶ 11    In a partial dissent, Justice Rochford agreed with *Chraca*'s interpretation of section 2-621(b), believing that it properly focused on the *manufacturer's inability to pay* rather than on the *plaintiff's inability to enforce the judgment*. The partial dissent also noted that the legislature had not adopted a provision, approved in other states, allowing reinstatement if a plaintiff could not enforce a judgment. Finally, because Illinois recognizes out-of-state judgments, the dissent argued that a defendant is not "judgment-proof" as long as it has assets outside the court's jurisdiction. Here, the record showed that Taihua Group was still in operation, with subsidiaries in China and several other countries. Cassidy even admitted on appeal that, however unlikely, Taihua Group could still choose to pay the damages " 'voluntarily.' " 2017 IL App (1st) 160933, ¶ 62 (Rochford, J., concurring in part and dissenting in part).

¶ 12    This court allowed China Vitamins' petition for leave to appeal pursuant to Illinois Supreme Court Rule 315(a) (eff. Jan. 1, 2015). We also permitted the Illinois Trial Lawyers Association to file an *amicus curiae* brief in support of Cassidy.

¶ 13                                    II. ANALYSIS

¶ 14    We now examine when a distributor that was previously dismissed as a defendant in a strict product liability case under section 2-621 of the Illinois Code of Civil Procedure can be properly reinstated as a party under section 2-621(b)(4). See 735 ILCS 5/2-621 (West 1994). Section 2-621 sets forth a scheme that allows a defendant that is not a manufacturer of the allegedly defective product at issue in a strict liability action to seek dismissal after it accurately certifies the identity of the product's manufacturer. If the plaintiff then files a complaint that the manufacturer is required to answer, the trial court must dismiss the strict tort liability claim against the certifying nonmanufacturer-defendant, in the absence of certain limitations not at issue here. 735 ILCS 5/2-621(a), (b) (West 1994). Because the conditions set forth in section 2-621(b) result in the dismissal of a defendant that is not the product manufacturer, that section is sometimes deemed the "seller's exception." 2017 IL App (1st) 160933, ¶ 19. Even if the certifying defendant is dismissed, however, the trial court retains

---

[4]The appellate court also unanimously reversed the dismissal of Cassidy's negligence product liability claim against China Vitamins, but that ruling is not before this court.

jurisdiction over it, and section 2-621(b) permits the plaintiff to request the vacatur of the dismissal order and the reinstatement of that defendant as a party at any time if the plaintiff is able to satisfy one of five enumerated criteria. 735 ILCS 5/2-621(b)(1)-(5) (West 1994).

¶ 15 The dispute in this case specifically addresses the application of subsection 2-621(b)(4), requiring the plaintiff to show that "the manufacturer is unable to satisfy any judgment as determined by the court." 735 ILCS 5/2-621(b)(4) (West 1994). As a previously dismissed nonmanufacturer resisting reinstatement, China Vitamins argues Cassidy must show that the manufacturer of the defective flexible bulk container that caused his injuries is either bankrupt or no longer in existence, as required in *Chraca*, 2014 IL App (1st) 132325, ¶ 24. Cassidy, on the other hand, contends the evidentiary standard for reinstatement should be broader, requiring only a showing that the manufacturer is either judgment-proof or execution-proof. See 2017 IL App (1st) 160933, ¶¶ 33-34. Because this dispute requires us to construe the language of a statute, it presents a question of law, and our standard of review is *de novo*. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010).

¶ 16 The specific language at the core of the parties' statutory construction arguments states, in relevant part:

"The plaintiff may at any time subsequent to the dismissal [of a certifying defendant other than the manufacturer] move to vacate the order of dismissal and reinstate the certifying defendant ***, provided plaintiff can show one or more of the following:

* * *

(4*) That the manufacturer is unable to satisfy any judgment as determined by the court*[.]" (Emphasis added.) 735 ILCS 5/2-621(b)(4) (West 1994).

¶ 17 In construing any statute, the goal of this court is to ascertain and effectuate the intent of the legislature in enacting the provision. The statutory language, given its plain and ordinary meaning, is generally the most reliable indicator of that legislative intent, but a literal reading must fail if it yields absurd, inconvenient, or unjust results. *Bank of New York Mellon v. Laskowski*, 2018 IL 121995, ¶ 12. When reviewing the language in a statute, we must consider the entire provision, keeping in mind its intended subject matter. *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 12. Here, that subject matter is strict product liability.

¶ 18 China Vitamins asserts that the proper focus of subsection (b)(4) is the *manufacturer's ability to pay* a judgment, not the *plaintiff's ability to collect* on that judgment. That interpretation would be viable if the requirement that "the manufacturer is unable to satisfy any judgment" is read in isolation. When viewed in light of the remainder of subsection (b) and the legislature's overarching purpose in providing relief to injured parties through strict product liability actions, however, it is not. China Vitamins' interpretation conflicts with both the express language of section 2-621(b)(3) and the public policy considerations underlying the legislature's decision to create a strict product liability scheme.

¶ 19 As part of that scheme, section 2-621(b)(3) allows a dismissed nonmanufacturer to be reinstated as a defendant if "*the manufacturer no longer exists*, cannot be subject to the jurisdiction of the courts of this State, or, despite due diligence, the manufacturer is not amenable to service of process." (Emphasis added.) 735 ILCS 5/2-621(b)(3) (West 1994). If, as China Vitamins claims, the phrase "unable to satisfy any judgment" in subsection (b)(4)

requires a showing that the manufacturer is either bankrupt or no longer in existence, then it duplicates the portion of subsection (b)(3) that expressly premises reinstatement on proof that "the manufacturer no longer exists" (735 ILCS 5/2-621(b)(3) (West 1994)), rendering the latter criterion superfluous. Because that result is contrary to our fundamental rules of statutory construction, we must reject it if another construction is reasonable. *In re Marriage of Goesel*, 2017 IL 122046, ¶ 13 (stating that "each word, clause, and sentence of a statute must be given a reasonable construction, if possible, and should not be rendered superfluous").

¶ 20      China Vitamins tries to overcome this glaring defect in its argument by asserting that the criteria in subsection (b)(3) all relate exclusively to "situations that arise only at the time that the action is brought against the manufacturer." Presumably then, if a manufacturer ceases to exist at any time after a complaint is filed against it, the dismissed defendant could not be reinstated under subsection (b)(3). China Vitamins' view necessarily suggests that subsection (b)(4) was intended to apply only when a manufacturer ceases to exist after an action was commenced against it. Unfortunately, however, that interpretation suffers from two fatal flaws.

¶ 21      First, the plain language simply does not say what China Vitamins says it does. Nothing in subsection (b)(3) limits the requirement that the manufacturer no longer exist to any particular time frame. By limiting the applicable time frame, China Vitamins is improperly adding a condition to the express statutory language, contrary to our rules of statutory construction. See *In re Estate of Shelton*, 2017 IL 121199, ¶ 33. In enacting subsection (b)(3), the legislature carefully enumerated each relevant prerequisite for reinstatement, expressly including the possibility that the manufacturer is no longer in existence. In construing subsection (b)(4), however, China Vitamins would have us conclude that the legislature chose to merely hint at that very same prerequisite as a hidden meaning within the far more open-ended phrase "unable to satisfy a judgment." The validity of that conclusion is far from apparent when viewed in light of the language actually enacted by the legislature in subsections (b)(3) and (b)(4).

¶ 22      Second, even if China Vitamins' construction is correct, it still does not restrict the conditions for reinstatement that the legislature intended to convey in subsection (b)(4) to only manufacturers that are bankrupt or no longer exist. The plain meaning of the language adopted is far broader than that. Our rules of statutory construction do not permit us to add new limitations to subsection (b)(4) that the legislature did not specifically enact. *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, ¶ 94 (Garman, J., concurring in part and dissenting in part, joined by Thomas and Karmeier, JJ.). In short, China Vitamins' textually unsupported and unnecessarily narrow reading of the statute fails to comport with our traditional construction rules. Because nothing in the plain language of section 2-621(b) buttresses China Vitamins' narrow interpretation, we decline to adopt that view.

¶ 23      China Vitamins offers yet another statutory construction argument, however. It points to statutes from other jurisdictions that expressly allow distributors of defective products to be reinstated as defendants when it is "highly probable that a claimant would be unable to enforce a judgment." China Vitamins contends that the lack of similar language in section 2-621(b)(4) portends our legislature's intent to condition reinstatement on the more limited requirement that the manufacturer must be either bankrupt or nonexistent. Under that view, the appellate court erred by "rewriting" section 2-621(b)(4) to expand its scope. We disagree.

¶ 24    While the presence of express language allowing reinstatement of a dismissed defendant when a judgment is unlikely to be enforceable would certainly be probative, and perhaps even determinative, of our legislature's intent, the absence of that language correlates similarly. As shown by the widely contrasting degree of detail specified in sections 2-621(b)(3) and 2-621(b)(4), the legislature was well aware of how to state the relevant conditions for reinstatement both narrowly, as it did in subsection (b)(3), and more broadly, as it did in subsection (b)(4). Rather than providing a list of precise conditions in subsection (b)(4), however, the legislature chose instead to enact a set of much more open-ended criteria. Compare 735 ILCS 5/2-621(b)(3) (West 1994) (providing for reinstatement when "the manufacturer no longer exists, cannot be subject to the jurisdiction of the courts of this State, or, despite due diligence, the manufacturer is not amenable to service of process"), with 735 ILCS 5/2-621(b)(4) (West 1994) (providing for reinstatement when "the manufacturer is unable to satisfy any judgment as determined by the court"). We decline to speculate, as China Vitamins does, that the absence of verbiage permitting reinstatement when the successful enforcement of a judgment is not "highly probable" is determinative of some unexpressed legislative intent. Instead, we honor the legislature's decision to outline broad general reinstatement conditions in subsection (b)(4) as evidence of its underlying intent. Contrary to China Vitamins' claim, by adhering to the legislature's distinctive linguistic choices in subsections (b)(3) and (b)(4), the appellate court did not improperly rewrite the statute in an act "tantamount to legislation by litigation." Because we must review the express limitations in the relevant provisions as written, we remain unpersuaded by China Vitamins' final statutory construction argument.

¶ 25    To further ground our construction of section 2-621(b), we also consider the fundamental public policies underlying our legislature's enactment of Illinois's strict product liability laws. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 37 ("We presume that several statutes relating to the same subject are governed by a single spirit and policy and that the legislature intended the statutes to be consistent and harmonious."); see also *Lawler*, 2017 IL 120745, ¶ 12 (our review of statutory language must consider the relevant subject matter); *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶¶ 25, 62 (noting that in construing legislative intent the court may rely on "not only the language of the statute but also the purpose and necessity for the law, the evils sought to be remedied, and the goals to be achieved" and that the court's statutory review was consistent with public policy). "[A]t the heart of strict liability law" is "the policy of preventing future harm." *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 263 (2007) (citing 1 David G. Owen, M. Stuart Madden & Mary J. Davis, Madden & Owens on Product Liability § 8:3, at 447 (3d ed. 2000)). As we explained in *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 177 Ill. 2d 21 (1997):

> *"The purpose of strict liability in tort is to place the loss caused by defective products on those who create the risks and reap the profits by placing such products in the stream of commerce. Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.*, 62 Ill. 2d 77, 82 (1975). The rationale underlying this liability is threefold: (1) the public interest in human life and safety demands broad protection against the sale of defective products; (2) the manufacturer solicits and invites the use of his products by representing that they are safe and suitable for use; and (3) the losses caused by defectively dangerous products should be borne by those who have created the risks

and reaped the profits by placing the products into commerce." (Emphasis added.) *Trans States Airlines*, 177 Ill. 2d at 37-38 (citing *Suvada v. White Motor Co.*, 32 Ill. 2d 612, 619 (1965), and 14 Ill. Jur. Personal Injury and Torts § 33:1 (1994)).

¶ 26    All manufacturers, wholesalers, and retailers in the chain of distribution play an " 'integral role in the overall producing and marketing' " of the defective product, uniquely justifying the imposition of strict liability even if they do not have a hand in its development or manufacture. *Crowe v. Public Building Comm'n of Chicago*, 74 Ill. 2d 10, 13 (1978) (quoting *Dunham v. Vaughan & Bushnell Manufacturing Co.*, 42 Ill. 2d 339, 344 (1969)). As we explained in *Crowe*:

> "A seller who does not create a defect, but who puts the defective product into circulation, is still responsible in strict liability to an injured user. *Because the ultimate loss will ordinarily be borne, through indemnification, by the party that created the defect, the public policy concern is really who, between the injured user and the seller, should bear the initial loss. The seller is in a position to prevent a defective product from entering the stream of commerce.* The seller may either adopt inspection procedures or influence the manufacturer to enhance the safety of a product. *Moreover, the seller is generally better able to bear and distribute any loss resulting from injury caused by a defective product.* See Restatement (Second) of Torts sec. 402A, comment c (1965)." (Emphases added.) *Crowe*, 74 Ill. 2d at 13-14.

¶ 27    Other authorities have advanced similar policy justifications for imposing liability on any of the entities in a defective product's chain of distribution, regardless of their actual involvement in the production of the injurious defect. *Vandermark v. Ford Motor Co.*, 391 P.2d 168, 171-72 (Cal. 1964) (*en banc*); *Greenman v. Yuba Power Products, Inc.*, 377 P.2d 897, 901 (Cal. 1963) (*en banc*); *Liberty Mutual*, 62 Ill. 2d at 82; *Higgins v. Paul Hardeman, Inc.*, 457 S.W.2d 943, 948 (Mo. Ct. App. 1970); *Brandenburger v. Toyota Motor Sales, USA, Inc.*, 513 P.2d 268, 273 (Mont. 1973); *Santor v. A&M Karagheusian, Inc.*, 207 A.2d 305, 312 (N.J. 1965); Restatement (Second) of Torts § 402A cmt. c (1965). Indeed, in the context of strict product liability, each of the defendants in the product's chain of distribution may be held jointly and severally liable, regardless of its actual culpability in causing the injury. *Frazer v. A.F. Munsterman, Inc.*, 123 Ill. 2d 245, 265 (1988). To ameliorate the potential harshness of requiring a nonmanufacturer who lacks a direct hand in creating a defect to mount a strict liability defense, our legislature has chosen to enact the "seller's exception" at issue here.

¶ 28    Nothing about that drafting decision, however, diminishes the import of the fundamental policy interests underlying this state's strict product liability laws. The resounding drumbeat of those policies remains the same: to provide full compensation to plaintiffs injured due to defective or unsafe products whenever possible based on differences in the parties' degree of culpability. This court has consistently recognized those policy rationales: compared to the culpability of injured plaintiffs, entities in the chain of manufacture and distribution necessarily bear more responsibility, and inherently possess far superior ability and incentive, to prevent the initial creation of defective products and, later, to avert their progress through the stream of commerce. *Calles*, 224 Ill. 2d at 263 ("[A]t the heart of strict liability law" is "the policy of preventing future harm."); *Trans States Airlines*, 177 Ill. 2d at 37-38 ("The purpose of strict liability *** is to place the loss *** on those who create the risks and reap the profits ***." (citing *Liberty Mutual*, 62 Ill. 2d at 82)); *Crowe*, 74 Ill. 2d at 13-14 ("the public policy

concern is really who, between the injured user and the seller, should bear the initial loss. The seller is in a position to prevent a defective product from entering the stream of commerce. *** Moreover, the seller is generally better able to bear and distribute any loss ***. See Restatement (Second) of Torts sec. 402A, comment *c* (1965).") Given the purpose underlying our strict product liability laws, it is more than reasonable to conclude that the legislature did not intend the phrase "unable to satisfy any judgment" in subsection (b)(4) to undermine an injured plaintiff's ability to obtain a full recovery by cutting off access to other viable sources unless the product's manufacturer is bankrupt or no longer in existence. Bankruptcy and business failure are conditions that are entirely outside the control of the injured plaintiff, and the policy considerations underlying this state's strict tort liability laws do not support such a cramped interpretation of the intentionally broad language in subsection (b)(4).

¶ 29    For the same reasons, we conclude that China Vitamins' reliance on the interpretation of section 2-621(b) posited in *Chraca*, 2014 IL App (1st) 132325, is misplaced. In that factually similar case, the plaintiff's shoulder and neck were injured when the strap he was using to unload a shipment of golf cart batteries, weighing about 63 pounds each, broke. Initially, he filed a strict product liability claim against the battery distributor, U.S. Battery. *Chraca*, 2014 IL App (1st) 132325, ¶ 2. It, in turn, identified the Chinese company that manufactured the strap. After the plaintiff added that manufacturer as a defendant in an amended complaint, the trial court granted Chraca's motion for a default judgment against it. The domestic distributor of the strap complied with the requirements of section 2-621 and was dismissed from the lawsuit, over the plaintiff's objection. Two weeks later, the plaintiff unsuccessfully attempted to reinstate the distributor under section 2-621(b). The trial court concluded that, while it might be "difficult" for Chraca to enforce his default judgment against the Chinese manufacturer, that was not one of the statutory reinstatement criteria. *Chraca*, 2014 IL App (1st) 132325, ¶¶ 8-12, 15-16.

¶ 30    Chraca appealed, and the appellate court held that he had not established that the Chinese manufacturer was "unable to satisfy any judgment" under section 2-621(b)(4) because he failed to show that the company was bankrupt or nonexistent. *Chraca*, 2014 IL App (1st) 132325, ¶ 24. To the contrary, the court found that the evidence suggested the manufacturer was an ongoing concern. In its analysis, the appellate court relied on *Harleysville Lake States Insurance Co. v. Hilton Trading Corp.*, No. 12 C 8135, 2013 WL 3864244, at *3 (N.D. Ill. July 23, 2013), *Finke v. Hunter's View, Ltd.*, 596 F. Supp. 2d 1254, 1271 (D. Minn. 2009), and *Malone v. Schapun, Inc.*, 965 S.W.2d 177, 182 (Mo. Ct. App. 1998). Although the plaintiff submitted a joint affidavit from two Chinese attorneys stating that Chinese courts were unwilling to " 'recognize or enforce a judgment obtained in an American state court,' " that evidence was insufficient under the court's interpretation of section 2-621(b)(4). *Chraca*, 2014 IL App (1st) 132325, ¶ 25.

¶ 31    In the instant case, the appellate court rejected *Chraca*'s "bankrupt or nonexistent" standard as "flawed" and "not persuasive" because that decision had misconstrued the three cases it cited in support: *Harleysville*, *Finke*, and *Malone*. 2017 IL App (1st) 160933, ¶ 29. As the appellate court explained, those cases "actually considered the effect a manufacturer's judgment-proof status would have on the plaintiff's total recovery." 2017 IL App (1st) 160933, ¶ 30. Because we are reviewing the viability of the *Chraca* standard *de novo*, we, too, must examine the applicability of those three cases.

- 9 -

¶ 32    In *Harleysville*, 2013 WL 3864244, the federal district court addressed a nonmanufacturer's request to be dismissed as a defendant in a strict product liability action under section 2-621's seller's exception. Tellingly, that case did not involve a plaintiff's attempt to reinstate a previously dismissed nonmanufacturer under section 2-621(b)(4). In fact, its only connection to the reinstatement requirements at issue here was the plaintiffs' citation to *Rosenthal v. Werner Co.*, No. 06 C 2873, 2009 WL 995489 (N.D. Ill. Apr. 13, 2009).

¶ 33    In *Rosenthal*, "the defendant sought dismissal on the basis of language in the Seller's Exception that permits an injured party to proceed against a seller where the manufacturer appears to be judgment-proof" under subsections (b)(3) and (b)(4). *Harleysville*, 2013 WL 386244, at *3 (citing *Rosenthal*, 2009 WL 995489, at *6-7). Prior to concluding that the facts were not sufficiently developed to allow the retailer's dismissal, the district court in *Rosenthal* prematurely appears to have considered the application of the reinstatement conditions in subsections (b)(3) or (b)(4) because it misconstrued their relationship to the preceding portion of section 2-621(b) that allowed certifying nonmanufacturers to be dismissed from the case. Exemplifying its legal misunderstanding, the district court concluded that it could not apply either section 2-621(b)(3) or (b)(4) because the manufacturer's pending bankruptcy proceeding made it "too early to know whether these *exceptions to dismissal* might apply." (Emphasis added.) *Rosenthal*, 2009 WL 995489, at *6.

¶ 34    This court has never, however, deemed subsections (b)(3) and (b)(4) to be "exceptions to dismissal" of a certifying nonmanufacturer under section 2-621. The *Rosenthal* court misconstrued the statute, creating an interplay between distinct portions of section 2-621(b) that simply does not exist. Section 2-621(b) contains only one "exception to dismissal": once a strict product liability complaint has been filed against a manufacturer who is required to answer, "the court shall order the dismissal of a strict liability in tort claim against the certifying defendant ***, *provided the certifying defendant *** [is] not within the categories set forth in subsection (c)*." (Emphasis added.) 735 ILCS 5/2-621(b) (West 1994). Due to its misinterpretation of the statute, the *Rosenthal* court's discussion of the reinstatement criteria in subsections (b)(3) and (4) was premature and unsupported by any authority.

¶ 35    Nonetheless, the federal district court in *Harleysville* erroneously relied on *Rosenthal*'s analysis of the section 2-621(b) reinstatement provisions that characterized subsections (b)(3) and (b)(4) as exceptions to dismissal. *Harleysville*, 2013 WL 3864244, at *3. That error severely undercuts the persuasiveness of the analysis in *Harleysville* as well as *Chraca*'s reliance on that case in adopting the "bankrupt or nonexistent" standard for the reinstatement of a nonmanufacturer. *Chraca*, 2014 IL App (1st) 132325, ¶ 24 (citing *Harleysville* as an "[a]uthority indicat[ing] that in a section 2-621 proceeding, a company is deemed 'unable to satisfy any judgment' when it is bankrupt or nonexistent"). To the extent that *Harleysville* provides this court with *any* guidance, however, its reliance on *Rosenthal* expressly recognizes that section 2-621(b)(4) permits reinstatement if the manufacturer "*appears to be judgment-proof*," supporting the interpretation advanced by Cassidy and the appellate court in this case. (Emphasis added.) *Harleysville*, 2013 WL 3864244, at *3.

¶ 36    Next, we examine the *Chraca* court's reliance on *Finke* for its "bankrupt or nonexistent" standard. *Chraca*, 2014 IL App (1st) 132325, ¶ 24. In *Finke*, the federal district court explained that in Minnesota a nonmanufacturer is generally not subject to strict product liability unless the plaintiff can show " 'that the manufacturer is unable to satisfy any judgment as determined

by the court,' " a standard identical to that in section 2-621(b)(4)'s reinstatement provision. *Finke*, 596 F. Supp. 2d at 1270 (quoting Minn. Stat. § 544.41(2)(d) (2004)). *Cf.* 735 ILCS 5/2-621(b)(4) (West 1994) (requiring a showing "[t]hat the manufacturer is unable to satisfy any judgment as determined by the court"). As in Illinois, the Minnesota statute " 'tempers the harsh effect of strict liability as it applies to passive sellers, while ensuring that a person injured by a defective product can recover from a viable source.' " *Finke*, 596 F. Supp. 2d at 1270 (quoting *In re Shigellosis Litigation*, 647 N.W.2d 1, 6 (Minn. Ct. App. 2002)). Similar to *Harleysville* and *Rosenthal*, the initial dismissal of a Minnesota nonmanufacturer is premised on whether " 'the plaintiff's action cannot reach a manufacturer or the manufacturer is insolvent.' " *Finke*, 596 F. Supp. 2d at 1270 (quoting *In re Shigellosis Litigation*, 647 N.W.2d at 7). In Illinois, however, the initial dismissal standard is different; the *dismissal* of a nonmanufacturer under section 2-621 is not dependent on the availability of damages from the manufacturer. That condition is relevant only in the context of a plaintiff's *reinstatement* action. This distinction alone necessarily limits *Finke*'s applicability here for the reasons cited in our discussion of *Harleysville* and *Rosenthal*.

¶ 37    Finally, *Malone*, 965 S.W.2d at 182, also relied on in *Chraca*, is readily distinguishable on both its facts and law. In *Malone*, an allegedly defective rubber tarp strap broke while in use, seriously injuring the plaintiff's eye, face, and hand and causing him to lose vision in his left eye. In relevant part, the plaintiff and his wife filed a strict product liability action against the manufacturer, supplier, and retailer of the strap. Later, they entered into a partial settlement with the disputed supplier and manufacturer that released them both in exchange for partial payment of their claims, leaving only the retailer to defend the lawsuit. When the retailer sought dismissal of the only strict liability claims raised under Missouri's version of the seller's exception statute,[5] the trial court granted the motion, prompting the plaintiffs' appeal. *Malone*, 965 S.W.2d at 179-80.

¶ 38    On appeal, the plaintiffs again relied on Missouri's seller exception, a statute that differs significantly from its Illinois counterpart. Under the Missouri statute, the seller could be *dismissed* from a strict product liability claim " 'if another defendant, including the manufacturer, is properly before the court and from whom total recovery may be had for plaintiff's claim.' " *Malone*, 965 S.W.2d at 181 (quoting Mo. Rev. Stat. § 537.762 (1994)). As in *Harleysville* and *Finke*, the essence of the latter criterion is found in Illinois's *reinstatement* statute, not its provision for a nonmanufacturer's initial dismissal. Because statutory construction lies at the heart of this case, this substantive linguistic difference alone severely undercuts *Malone*'s applicability. Ultimately, however, *Malone* was decided due to the effect of the plaintiffs' settlement agreement voluntarily dismissing the manufacturer and supplier, unique facts that are not present either here or in *Chraca*. For those reasons, *Malone* also fails to provide any support for *Chraca*'s "bankruptcy or nonexistence" standard.

¶ 39    The only "authorities" *Chraca* cites for deeming the section 2-621(b)(4) criterion that a manufacturer be "unable to satisfy any judgment" synonymous with its bankruptcy or nonexistence are *Harleysville*, *Finke*, and *Malone*. After carefully reviewing those three cases, we agree with the appellate court that *Chraca*'s reliance on them was misplaced. In enacting the statutes in those foreign decisions, the legislatures expressly intended a different interplay between that standard and the dismissal of a nonmanufacturer than did the Illinois legislature.

_____

[5]The statute is described as an "innocent seller statute" in Missouri. *Malone*, 965 S.W.2d at 181.

For that reason, those cases are unpersuasive and offer little guidance. We decline to adopt the reasoning in *Chraca* and overrule that decision. Instead, we adhere to our previously stated analysis of the proper construction of section 2-621.

¶ 40     We hold that reinstatement under section 2-621(b)(4) of a nonmanufacturer such as China Vitamins is not solely contingent on the manufacturer being bankrupt or nonexistent. If an injured strict product liability plaintiff can establish other circumstances that effectively bar recovery of the full measure of judgment damages awarded, a nonmanufacturer in the chain of distribution may be reinstated as a defendant under section 2-621(b)(4). That result harmonizes the plain language of section 2-621(b), when read in its entirety, the legislature's intent, and the public policies underlying the enactment of our strict product liability laws to create a cohesive and consistent statutory scheme.

¶ 41     This holding alone is not dispositive of Cassidy's reinstatement request, however, and he argues that we should decide, as a matter of law, whether he has met his statutory burden and then remand the cause with instructions allowing him to amend his complaint to reinstate China Vitamins as a defendant. In support, he cites his efforts to collect on the default judgment shown in the appellate record.

¶ 42     After parsing the record, we conclude that it is far from dispositive. As the party seeking reinstatement, Cassidy bears the burden of showing that the relevant criteria have been met. 735 ILCS 5/2-621(b) (West 1994) ("The plaintiff may at any time subsequent to the dismissal move to vacate *** and reinstate the certifying defendant ***, *provided plaintiff can show one or more of the following*[.]" (Emphasis added.)). Our review of the appellate record reveals that, from March through October 2013, Cassidy issued citations to discover assets to Taihua Group and a number of third parties, including HSBC Bank, in an attempt to identify assets that could be used to satisfy the judgment. Most of those attempts were either quashed or ultimately dismissed without revealing any of the manufacturer's assets. The fate of the remaining citations, however, is not clear. And, although Cassidy's motion to reinstate China Vitamins uses the "attached exhibit D" to support his claim that he "has made exhaustive attempts to collect the judgment entered against [the manufacturer] and has been unable to do so," that attachment fails to appear anywhere in the record. After piecing together information from other parts of the record, it appears that "exhibit D" is the affidavit of Douglas Giese, an attorney Cassidy hired to pursue collection. That affidavit is not in the record, precluding our review of its contents to determine, as a matter of law, if, or how, it supports Cassidy's claim that his collection efforts have been "exhaustive."

¶ 43     While it may indeed be true that Cassidy's efforts have not led him to recover even "a single dollar," that does not, under the record before us, "lead[ ] to the inescapable conclusion" that Taihua Group has "no assets with which to satisfy the judgment against it," as Cassidy claims. The record includes screenshots indicating that Taihua Group maintains a functioning website. Its website boasts that the manufacturer "has its own brand and sales network covering Asia-Pacific, Europe and North America. 60% of its products are sold and delivered directly to multinational chemical and food companies." Taihua Group also touts "its own brand and global sales and logistics network cover[ing] Asia Pacific, Middle East, Europe and North America," noting that exports comprised 70% of its sales and that it was "superior business partners for many global famous food, chemical enterprises and distributors of North America." Both these claims strongly suggest the manufacturer has close continuing ties with

Europe and North America. In addition, a world map on the website reveals that Taihua Group had a domestic sales office in the state of Georgia and foreign sales offices in Lille, France, and Munich, Germany, with a "central warehouse" in Cologne, Germany. The "Key Account Manager" for its European sales is listed as Mrs. Martina Upphoff, and her contact information includes an office in Munich, Germany.[6] China Vitamins also points to Taihua Group's LinkedIn page and the pages of a number of workers claiming to be employed there to argue that the manufacturer is indeed an ongoing business. Based on the totality of the information in the record before us, it appears that several viable avenues for Cassidy's collection efforts may remain untapped.

¶ 44    Nonetheless, we, like the appellate court, cannot properly assess whether Cassidy's collection efforts have been sufficient to show that the manufacturer is "unable to satisfy any judgment," as required by the statute. The focus of the trial court proceedings was on whether the court had personal jurisdiction over Taihua Group and whether Cassidy had met the *Chraca* standard by showing the manufacturer was bankrupt or no longer in existence.

¶ 45    In its original September 21, 2015, oral ruling granting Cassidy's motion to reinstate, the trial court improperly focused on whether it had jurisdiction over the reinstatement action and failed to consider the statutory requirements in section 2-621.[7] China Vitamins pointed out those errors in its motion to reconsider the reinstatement order, and the trial court corrected them, vacating its original reinstatement order. After starting its analysis anew, the court denied Cassidy's motion to reinstate on December 14, 2015, and dismissed China Vitamins from the case. Cassidy then filed a motion to reconsider the reinstatement denial, basing his request on his continued reliance on the trial court's alleged lack of personal jurisdiction over Taihua Group and adding the argument that reinstatement was proper under sections 2-621(b)(3) and 2-621(b)(4). Later, Cassidy faxed to opposing counsel a one-page amended motion to reconsider. In it, he requested an evidentiary hearing where he would show that Taihua Group "cannot be subject to the jurisdiction of the courts of this State" and "is unable to satisfy any judgment in this matter." The trial court never addressed the amended motion and instead struck it because Cassidy never actually filed it with the court. His request for an evidentiary hearing also remained unsupported by any showing of newly discovered evidence.

¶ 46    The trial court ultimately rejected Cassidy's initial motion for reconsideration of the order denying China Vitamins' reinstatement. Its memorandum opinion once again rejected the claim that the court lacked jurisdiction over Taihua Group and concluded that "the Taihua Group is a functioning and operational company and there is no evidence before the Court that it is unable to satisfy the judgment." The court noted "the problem here is the Plaintiff's inability to collect the judgment, which is not an enumerated basis upon which to reinstate a certifying defendant." The court also rejected Cassidy's reliance on *Chraca*. Although the court applied *Chraca*'s requirement that the plaintiff seeking reinstatement must prove that the defendant manufacturer is bankrupt or nonexistent, it concluded that the submitted evidence did not support the entry of those findings.

---

[6]The website indicates that office is in "Munchen," a German spelling of "Munich."

[7]The record on appeal contains no transcripts addressing any hearings on the reinstatement issue. The substance of those proceedings was necessarily gleaned, when possible, from the parties' filings and the trial court's orders.

¶ 47        Because of both the paucity of relevant evidence in the record and this court's repudiation of the "bankrupt or nonexistent" standard from *Chraca* that was the focal point of the parties and the trial judge, we remand this cause to the circuit court for consideration of the sufficiency of the evidence concerning Cassidy's efforts to collect the default judgment. We decline Cassidy's suggestion to detail the specific evidentiary showing necessary at this time. As shown by even the limited record in this case, the myriad combinations of evidence that could suffice to provide a statutory showing "[t]hat the manufacturer is unable to satisfy any judgment as determined by the court" dissuades us from attempting to parse the specific evidentiary showing required in a particular case. See 735 ILCS 5/2-621(b)(4) (West 1994). As the express language enacted by the legislature states, we leave the requisite showing to be "determined by the court" in each individual case. The precise formula needed to satisfy the plaintiff's evidentiary reinstatement burden is best adduced by the trial court.

¶ 48                                    III. CONCLUSION

¶ 49        For the reasons stated, we reject the "bankrupt or nonexistent" standard for reinstatement under section 2-621(b)(4) promulgated in *Chraca* and overrule that decision. Instead, we read the statute to permit the trial court to rely on a broader range of factors to determine if a particular manufacturer is "unable to satisfy" the judgment against it. We affirm the judgment of the appellate court and remand the cause to the trial court for its determination of whether the manufacturer Taihua Group "is unable to satisfy a judgment as determined by the court," as mandated by section 2-621(b)(4).

¶ 50        Appellate court judgment affirmed.

¶ 51        Circuit court judgment reversed.

¶ 52        Cause remanded.

¶ 53        CHIEF JUSTICE KARMEIER, dissenting:

¶ 54        As the majority notes, this court is called on to determine the meaning of section 2-621(b)(4) of the Code of Civil Procedure (735 ILCS 5/2-621(b)(4) (West 1994)), which permits a dismissed nonmanufacturer defendant to be reinstated in a strict liability claim on plaintiff's showing that "the manufacturer is unable to satisfy any judgment as determined by the court."

¶ 55        Under the terms of the statute, the circuit court must dismiss a nonmanufacturing defendant "once the plaintiff has filed a complaint against the manufacturer" and after the manufacturer has answered or has been required to answer or otherwise plead. 735 ILCS 5/2-621(b) (West 1994). Therefore, filing a complaint against the manufacturer and requiring the manufacturer to respond is a prerequisite to dismissal under section 2-621. Section 2-621(b) permits reinstatement of a dismissed nonmanufacturer defendant when the plaintiff shows one or more of the following situations:

        "(1) That the applicable period of statute of limitation or statute of repose bars the assertion of a strict liability in tort cause of action against the manufacturer or manufacturers of the product allegedly causing the injury, death or damage; or

        (2) That the identity of the manufacturer given to the plaintiff by the certifying defendant or defendants was incorrect. Once the correct identity of the manufacturer

- 14 -

has been given by the certifying defendant or defendants the court shall again dismiss the certifying defendant or defendants; or

(3) That the manufacturer no longer exists, cannot be subject to the jurisdiction of the courts of this State, or, despite due diligence, the manufacturer is not amenable to service of process; or

(4) That the manufacturer is unable to satisfy any judgment as determined by the court; or

(5) That the court determines that the manufacturer would be unable to satisfy a reasonable settlement or other agreement with plaintiff." 735 ILCS 5/2-621(b) (West 1994).

¶ 56    Here, it is undisputed that, after certifying Taihua Group, a manufacturer based in China, as the manufacturer of the defective flexible bulk container at issue, China Vitamins was properly dismissed from the case. What is at dispute is whether plaintiff satisfied his burden of proving that the order dismissing China Vitamins should be vacated and China Vitamins be reinstated in the litigation pursuant to section 2-621(b)(4).

¶ 57    The majority holds that the circuit court can vacate the dismissal of a nonmanufacturer defendant under section 2-621(b)(4) upon plaintiff establishing "circumstances that effectively bar recovery of the full measure of judgment damages awarded." *Supra* ¶ 40. What the majority is actually saying is that section 2-621(b)(4) means that a nonmanufacturer defendant can be reinstated when the plaintiff is unable to enforce a judgment, not whether the manufacturer has the ability to satisfy the judgment. For the following reasons, I cannot join the majority opinion.

¶ 58    This case can be resolved on the basis of plain statutory language and well-established legal presumptions when analyzed properly. The primary objective of statutory interpretation is to ascertain and give effect to the legislative intent. *People v. Hardman*, 2017 IL 121453, ¶ 19. This inquiry must always begin with the plain and ordinary language of the statute, which is the surest and most reliable indicator of legislative intent. *People v. Goossens*, 2015 IL 118347, ¶ 9. If the language of a statute is clear and unambiguous, we will apply it as written, without resort to other aids of statutory construction. *In re Jarquan B.*, 2017 IL 121483 ¶ 22. Accordingly, this court's analysis should begin by considering the plain meaning of the phrase "the manufacturer is unable to satisfy any judgment" as written in section 2-621(b)(4).

¶ 59    Although the majority accurately recites basic statutory interpretation rules, the majority fails to apply the rules properly. Nowhere does the majority focus on the meaning of the words in section 2-621(b)(4). Instead of analyzing the plain meaning of the statute in accordance with our prescribed rules, the majority tries to overcome this glaring defect in its analysis by jumping to reasons why it disagrees with China Vitamins' statutory interpretation, concluding that the opposite result must be the correct interpretation. See, *e.g.*, *supra* ¶ 22 (the majority finds—without providing its own analysis—that the plain meaning of section 2-621(b)(4) "is far broader" than China Vitamins' interpretation).

¶ 60    In conducting its statutory interpretation analysis, the majority skips over the first fundamental step that words must be given their "ordinary and popularly understood meaning," absent a definition in the statute indicating legislative intent. *In re Ryan B.*, 212 Ill. 2d 226, 232 (2004). Under the proper analysis, because there is no definition in the statute regarding the phrase "unable to satisfy," we therefore look to the dictionary meanings of these

words. *Id.*; *People v. Ward*, 215 Ill. 2d 317, 325 (2005). The majority overlooked this crucial step likely because the dictionary definitions contradict the majority's plain language analysis.[8]

¶ 61    Merriam-Webster's Dictionary defines "unable" as "not able: INCAPABLE." Merriam-Webster's Collegiate Dictionary 1359 (11th ed. 2006). While the word "able" is defined as "having sufficient power, skill, or resources to accomplish an object" (Merriam-Webster's Collegiate Dictionary 3 (11th ed. 2006)), Black's Law Dictionary defines "satisfaction" as "[t]he fulfillment of an obligation; esp., the payment in full of a debt." Black's Law Dictionary 1460 (9th ed. 2009); see also Merriam-Webster's Collegiate Dictionary 1104 (11th ed. 2006) (defining "satisfy" as "to meet a financial obligation"). Giving the statutory terms—"unable," "able," and "satisfy"—their plain meanings, it is clear section 2-621(b)(4) permits reinstatement of a dismissed nonmanufacturer defendant when the manufacturer is not able or is incapable of payment in full of its debt under the judgment. As such, the plain language of the statute dictates that the ultimate determination for reinstating a dismissed nonmanufacturer defendant is dependent on whether the manufacturer is incapable of fulfilling its obligation under a judgment entered by the court. That judgment here is a default judgment entered against Taihua Group for over $9 million. Therefore, the proper analysis turns to whether Taihua Group is unable to fulfill its debt obligation in full.

¶ 62    Unfortunately, plaintiff provides little information about Taihua Group's financial viability, and the record is underdeveloped at this point about whether Taihua Group is unable to discharge its obligation. Rather, in seeking reinstatement under section 2-621(b)(4), plaintiff argued that he made exhaustive attempts to collect the default judgment against Taihua Group, that he has been unable to do so, and that such efforts "will continue to be unavailing." Those "exhaustive" efforts included issuing a citation to discover assets against Taihua Group, which the circuit court quashed on May 23, 2013, for lack of proper service on a foreign resident and foreign business entity. Between March 27, 2013, and October 16, 2013, the plaintiff also issued third-party citations to discover assets in pursuit of collection of the judgment only in Illinois, without success. Plaintiff, however, never sought to enforce the judgment elsewhere outside of Illinois. Instead, plaintiff sought reinstatement under section 2-621(b)(4) primarily on the basis of his difficulty in enforcing the judgment in Illinois.

¶ 63    Before this court, plaintiff does not assert that Taihua Group is financially unable to pay the judgment imposed by the circuit court. In fact, as noted by the majority, the record tells a different story. The record shows that Taihua Group owns assets outside of China and has ongoing operations in the United States, France, and Germany. These facts refute any initial claim that the manufacturer-defendant is unable to satisfy any judgment.

¶ 64    There is nothing unreasonable about a judgment creditor, like plaintiff, having to enforce a judgment in another jurisdiction. No civil judgment is self-executing—even in a personal injury case.

¶ 65    Under article IV, section 1, of the United States Constitution (U.S. Const., art. IV, § 1), states have a constitutional obligation to give full faith and credit to the decisions rendered by sister states. But, as the majority notes, plaintiff has presented no evidence that his judgment

[8]In fact, the majority cites no authority, case law, dictionaries, secondary sources, or the legislative history of the provision to support its interpretation.

- 16 -

would be unenforceable outside Illinois. *Supra* ¶¶ 45-47. Thus, plaintiff's difficulty in enforcing the judgment elsewhere in the United States is of no concern. Furthermore, China Vitamins provided evidence that Taihua Group has ongoing commercial operations through various subsidiaries in China and other countries. This included sales and warehouse facilities in Germany and France. As China Vitamins correctly notes, despite any difficulties plaintiff may have collecting his judgment in China, if it comes to that, plaintiff has other viable opportunities inside and outside of the United States to satisfy the default judgment.[9]

¶ 66     These mechanisms reflect that it is a normal part of the litigation process to enforce Illinois judgments outside of this state. As such, all viable legal avenues should be explored prior to reinstating a nonmanufacturer defendant. Until plaintiff provides evidence that Taihua Group has no ability to meet its obligation, plaintiff cannot reinstate a dismissed nonmanufacturer defendant pursuant to section 2-621(b)(4). Accordingly, the circuit court was correct to deny plaintiff's motion.

¶ 67     Although one might initially find this interpretation of the statute unfair to plaintiff because it requires him to determine the financial viability of a manufacturer prior to seeking reinstatement of a nonmanufacturer defendant, I note that this interpretation does not indefinitely bar plaintiff from recovery in this case. That is so because nothing in the statute would prevent plaintiff from bringing another, similar motion if plaintiff can provide relevant evidence regarding Taihua Group's inability to satisfy the default judgment. See 735 ILCS 5/2-621(b) (West 1994) ("The plaintiff may *at any time* subsequent to the dismissal move to vacate the order of dismissal and reinstate the certifying defendant or defendants ***." (Emphasis added.)). Accordingly, I would affirm the trial court's order, finding that plaintiff failed to meet the conditions for reinstatement under section 2-621(b).

¶ 68     I take further issue with the majority's expansive interpretation of section 2-621(b)(4) and its focus on *plaintiff's inability to enforce* the default judgment rather than the *manufacturer's inability to satisfy* that judgment.

¶ 69     Contrary to the unambiguous language of the statute, the majority interprets section 2-621(b)(4) to mean that a court can vacate the dismissal of a nonmanufacturer seller upon a plaintiff establishing "circumstances that effectively bar recovery of the full measure of judgment damages awarded." *Supra* ¶ 40. The majority remands the cause to the circuit court "for consideration of the sufficiency of the evidence concerning [plaintiff's] efforts to collect the default judgment." *Supra* ¶ 47. In other words, the majority remands the matter to allow plaintiff to show his inability to enforce the default judgment. However, nothing in the statute refers to a plaintiff's ability to *enforce* a judgment. But that is precisely what the majority's holding promotes in contravention of the fundamental rule of statutory construction that "this court cannot read into the statute additional elements not intended by the legislature." *In re Andrew B.*, 237 Ill. 2d 340, 352, (2010). The majority's interpretation rewrites section 2-621(b)(4) to include "unable to enforce" language under the guise of statutory construction and would be tantamount to judicial legislation. Accordingly, I agree with Justice Rochford's partial dissent that what is evident from that plain language is that the proper focus should be

_____

[9]German law, for instance, contains specific provisions for the enforcement of foreign judgments like the one at issue here. See Zivilprozessordnung [ZPO] [Code of Civil Procedure] §§ 328, 722, 723, *translation at* https://www.gesetze-im-internet.de/englisch_zpo/englisch_zpo.html (Ger.) [https://perma.cc/KK87-6P9N].

on the manufacturer's *inability to satisfy* a judgment. 2017 IL App (1st) 160933, ¶ 48 (Rochford, J., concurring in part and dissenting in part). Section 2-621(b)(4) plainly allows vacating the dismissal of the nonmanufacturer based on the manufacturer's ability to satisfy the judgment, and not whether the plaintiff can enforce the judgment.

¶ 70    The majority also fails to explain what "circumstances" a plaintiff must establish when demonstrating to the circuit court that it has been effectively barred from recovery. *Supra* ¶ 40. The majority explicitly refrains from providing any guidance to the courts or parties regarding its ambiguous holding. *Supra* ¶ 47. Rather, the majority reads into section 2-621(b)(4) additional, unlisted factors that could be considered when determining whether to reinstate a nonmanufacturer defendant. *Supra* ¶¶ 47-49. As a result, the majority broadens the language of section 2-621(b)(4) to include any type of evidence showing that the plaintiff cannot enforce the judgment. This broad interpretation will not only create evidentiary conflicts among the circuit courts and appellate districts, it again goes against a plain reading of the statute, which focuses on the ability of the manufacturer to fulfill its obligation of a debt under any judgment. Future plaintiffs are left wondering how much (or little) effort is necessary to convince a circuit judge to reinstate a nonmanufacturer defendant. As for dismissed nonmanufacturer defendants, they must now extensively challenge and prove whether the plaintiff performed his or her due diligence on enforcing or collecting the judgment in order to remain dismissed from litigation.

¶ 71    Moreover, the majority's focus on the plaintiff's difficulty to enforce the judgment is not only absent from the plain language of the statute, it improperly shifts the burden to a nonmanufacturer defendant to prove the financial viability of the manufacturer defendant. When considering whether to reinstate a dismissed nonmanufacturer defendant, the plaintiff bears the burden of establishing that a statutory basis exists for the reinstatement of a dismissed defendant. 735 ILCS 5/2-621(b)(4) (West 1994) ("*The plaintiff* may at any time subsequent to the dismissal move to vacate *** and reinstate the certifying defendant ***, provided plaintiff can show one or more of the following[.]" (Emphasis added.)); *Cherry v. Siemans Medical Systems, Inc.*, 206 Ill. App. 3d 1055, 1064 (1990) ("The onus is on the plaintiff to make this showing [for reinstatement], which presumably may be rebutted by the certifying defendant."). The majority opinion turns the statutory burden of proof upside down. Under the majority's holding, nonmanufacturer defendants will shoulder the heavy burden of proving that the manufacturer of a defective product can satisfy a judgment entered against it. In essence, all a plaintiff must do is file a section 2-621(b)(4) motion under the pretext of showing some difficulty or "other circumstances" in enforcing the judgment. It would then be upon the nonmanufacturer defendant to disprove plaintiff's assertion and prove there are no set of circumstances preventing the plaintiff from enforcing or collecting the judgment against the manufacturer. *Supra* ¶ 40. Nonmanufacturer defendants should not have the burden of proving whether the plaintiff can enforce or collect on a judgment. The statute clearly states that this evidentiary burden rests on the plaintiff.

¶ 72    The majority's burden shifting is not only contrary to the statute's explicit language, it is contrary to the underlying policy of section 2-621 of dismissing nonmanufacturer defendants.

¶ 73    Much of the majority's opinion emphasizes the general public policy behind strict product liability. *Supra* ¶¶ 25-28. That policy, however, is not at issue in this case. Rather, we are concerned with the "seller's exception" of section 2-621, which permits a nonmanufacturer defendant sued for strict product liability to be dismissed if certain requirements are met. 735

ILCS 5/2-621(b) (West 1994). Moreover, I find that the majority's sole reliance on the general policy notions of strict liability is essentially meaningless in this situation because " '[v]ague notions of a statute's "basic purpose" are . . . inadequate to overcome the words of its text regarding the specific issue under consideration.' " (Emphasis omitted.) *Montanile v. Board of Trustees of National Elevator Industry Health Benefit Plan*, 577 U.S. ___, ___, 136 S. Ct. 651, 661 (2016) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 261 (1993)); *People v. Laubscher*, 183 Ill. 2d 330, 337 (1998) ("Where an enactment is clear and unambiguous, this court is not at liberty to read into it exceptions, limitations, or conditions that the legislature did not express; nor should this court search for any subtle or not readily apparent intention of the legislature."). Therefore, regardless of how compelling the majority views the general policy arguments, such analysis is insufficient to contradict the plain language of the statute, which concerns policy reasons regarding the "seller's exception" to strict product liability. *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. ___, ___, 136 S. Ct. 1989, 2002 (2016) ("policy arguments cannot supersede *** clear statutory text").

¶ 74    Contrary to the majority's reliance on general policy notions on strict product liability, the Restatement (Third) of Torts explains that imposing strict liability on nonmanufacturers does not advance the general policies of strict liability because, often, nonmanufacturers are not in a good position to feasibly adopt safer products. Restatement (Third) of Torts: Product Liability § 2 cmt. o (1998); see also M. Stuart Madden, *Selected Federal Tort Reform and Restatement Proposals Through the Lenses of Corrective Justice and Efficiency*, 32 Ga. L. Rev. 1017, 1085-86 (1998) ("It has, however, never been successfully explained what marginal improvement in safety is gained when compared to the safety levels that follow from a manufacturer's already existing incentives to avoid liability costs associated with suits against it directly, as practically all modern products liability suits proceed."); John G. Culhane, *Real and Imagined Effects of Statutes Restricting the Liability of Nonmanufacturing Sellers of Defective Products*, 95 Dick. L. Rev. 287, 293-94 (1991) (the argument that sellers can exert pressure on those manufacturers to create safer products is based "on several questionable assumptions," including that "nonmanufacturing sellers have sufficient knowledge to exert the desired pressure" and "nonmanufacturing sellers have sufficient market power and choice to make their decisions count"). Generally, seller exception statutes have been enacted to save a nonmanufacturer's resources in protecting itself when the nonmanufacturer did not, itself, render the product defective or was not in a position to prevent the defect. Restatement (Third) of Torts: Product Liability § 1 cmt. e, at 9 (1998) ("The legislation is premised on the belief that bringing nonmanufacturing sellers or distributors into products liability litigation generates wasteful legal costs. Although liability in most cases is ultimately passed on to the manufacturer who is responsible for creating the product defect, nonmanufacturing sellers or distributors must devote resources to protect their interests. In most situations, therefore, immunizing nonmanufacturers from strict liability saves those resources without jeopardizing the plaintiff's interests.").

¶ 75    In Illinois, section 2-621 was enacted so that innocent nonmanufacturers can defer liability upstream to the ultimate wrongdoer and avoid wasteful litigation costs. *Brobbey v. Enterprise Leasing Co. of Chicago*, 404 Ill. App. 3d 420, 428-29 (2010); *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 381 Ill. App. 3d 768, 775 (2008); *Logan v. West Coast Cycle Supply Co.*, 197 Ill. App. 3d 185, 193 (1990); *Cherry*, 206 Ill. App. 3d at 1060-61; *Sims v. Teepak, Inc.*, 143 Ill. App. 3d 865, 868 (1986).

¶ 76    A review of the legislative history of section 2-621 reveals that the legislature intended to provide stronger protections for nonmanufacturer defendants in cases of strict product liability. During the Illinois Senate's third reading of House Bill 2658, which culminated in the "seller's exception," Senator Moore stated that this provision "merely provides that a non-manufacturer shall not be liable in products liability actions based upon the doctrine of strict liability in tort if the manufacturer is available for action." 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 139 (statements of Senator Moore). Before the Illinois House of Representatives, Representative Bradley, the bill sponsor, explained that the policy of the statute attempts "to remove some of the liability to people who are not directly involved in the manufacture of that product that causes the damage or the injury or the death." 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 214 (statements of Representative Bradley). Representative Bradley further clarified that the "seller's exception" of section 2-621 was enacted to alleviate the unjust result of applying strict liability to every entity in the distributive chain when a nonmanufacturer did not create the defective product and therefore would be ill-equipped to defend a product that it did not design. 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 212 (statements of Representative Bradley). These statements illustrate that the legislature was focused on protecting innocent nonmanufacturer defendants by providing only limited, not broad, circumstances when a strict liability claim may be reinstated against them.

¶ 77    Turning from the general policy reasons for the "seller exception," floor transcripts further support a plain reading that the ultimate determination for reinstating a dismissed nonmanufacturer defendant is dependent on whether the manufacturer is incapable of fulfilling its obligation under a judgment entered by an Illinois court. When explaining that a plaintiff may at any time move to vacate the order of dismissal and reinstate the nonmanufacturer, Representative Bradley specifically mentioned the situation of when the manufacturer does "not have enough insurance coverage to take care of the amount of judgment." 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 213 (statements of Representative Bradley). Representative Bradley later noted that an innocent distributor, wholesaler, and retailer would be liable "if [the manufacturer has] gone bankrupt." 81st Ill. Gen. Assem., House Proceedings, May 25, 1979, at 214 (statements of Representative Bradley). Throughout the legislative process, the entirety of the floor debates regarding reinstatement concerned only whether the manufacturer was subject to this court's jurisdiction or was financially able to satisfy the judgment. Notably absent from the legislative history are any statements implying that reinstatement should occur based on a plaintiff's inability *to enforce* the judgment against the manufacturer in Illinois or elsewhere. As such, the legislative history is consistent with the plain meaning of section 2-621(b)(4).

¶ 78    In addition, since the purpose of section 2-621 was to counter the harsh consequences of general strict liability law on innocent nonmanufacturers, the majority's heavy reliance on the general policies behind strict product liability in its interpretation of section 2-621(b)(4) is unwarranted and misleading. By focusing on the general policies underlying strict product liability to support its interpretation of the "seller's exception," the majority negates the specific policies behind the enactment of section 2-621. Instead, China Vitamins should be given the policy protections underlying the "seller's exception" where, according to the record, it was never involved in the production or design of the defective product at issue but, rather, the defective product was only used to transport China Vitamins' goods. The majority ignores the fact that the legislature carefully balanced strict product liability policies with the fairness

- 20 -

of imposing liability on the ultimate wrongdoer. The majority's interpretation disrupts this careful balance by allowing a plaintiff to obtain a judgment against an equally innocent party although questions remain unanswered on whether the ultimate wrongdoer has the ability to pay for plaintiff's injuries.

¶ 79    In sum, I find that the meaning of the phrase, "the manufacturer is unable to satisfy any judgment as determined by the court" under section 2-621(b)(4) is clear: Is the manufacturer incapable of fulfilling its debt obligation pursuant to a judgment entered by the court? If a plaintiff can prove that the manufacturer is financially unable to fulfill its debt obligation as determined by the court, reinstatement may be warranted under section 2-621(b)(4). Accordingly, in this case, until plaintiff makes such a showing, China Vitamins should remain a dismissed nonmanufacturer defendant.

¶ 80    JUSTICE THOMAS joins in this dissent.